CHARLES J. SCHUCK, Judge.
The claimant, Ada Harless, alleges that on or about Sunday, the 9th day of November 1941, she fell from a certain suspension bridge spanning the Coal river at and near Racine, in Boone county, West Virginia. She further alleges that her fall from the said bridge was caused by insufficient and improperly constructed wiring running lengthwise with the bridge, and which was supposed to be a protection to pedestrians or persons being obliged to cross the said bridge. She testified (record p. 29) that it was about eleven o’clock on Saturday night, the night before her accident, that she crossed the bridge from the town of Racine, going in the direction of her daughter’s home; that her daughter and the daughter’s two children (record p. 29) were with her at the time; that she was' on her way to her *242 daughter’s home, where she had been living since some time in October previous, and that the next day at about eight o’clock in the moning she suffered the fall from the bridge as hereinbe-fore stated. Evidence offered by the State distinctly contradicts her as to the time she crossed the bridge the night before the accident, and also the persons with whom she was accompanied at the time. One of the state’s witnesses, Belcher by name, testifies positively that he accompanied the claimant over the said bridge some time about midnight, and that he sat with her on the railroad tracks, after passing over the bridge, for some fifteen or twenty minutes before she started from that point to her daughter’s home. There is also evidence of another witness that he saw her cross the bridge unaccompanied at midnight, and the evidence of the witness, Ramsey, who says that he took her home from the Glenview end of the bridge about one-thirty o’clock on Sunday morning, November 9, and that the claimant, at the time that the witness was accompanying her to her home, made the statement (record p. 127) “I been drunker than hell all night.” It is surprisingly strange that neither the daughter of the claimant nor her son-in-law were brought before the court as witnesses to corroborate her statements with reference to her movements on the night previous to the accident; and as no reasons or excuses were given for the absence of these persons, it may well be assumed that their testimony would likewise have been contradictory to the sworn statement of the claimant herself; at least not favorable to her. Testimony was also introduced that claimant had been intoxicated at previous times while living near Racine, and that on one occasion she was ejected from a beer establishment at Racine by reason of her condition.
We are convinced, from all the evidence, that she was in an intoxicated condition at least five or six hours before she was found sitting in the Coal river, as testified to by the witness Rowland, who also testified (record p. 90) that while he paid no attention to her breath at the time he attempted to remove her from the river, yet it was foul. The claimant is not corroborated by any direct testimony as to falling from the bridge, as *243 no witness was presented to give any such testimony; and while several witnesses were offered by the claimant who testified as to the unsafe condition of the bridge, we are of the opinion that the reliability of the witnesses presented by the state far outweighs that of those presented by the claimant, and that the bridge at the time of the alleged accident was in reasonably safe condition for pedestrians to cross and travel over. We repeat what we have heretofore held, that the state cannot absolutely guarantee the safety of travelers and pedestrians on highways and bridges under its control and can only be held liable when it or the state road commission, its agency, fails to use reasonable care in maintaining roads and bridges used by the general traveling public.
As already indicated, we are not inclined to accept claimant’s story of the accident, and without taking into consideration her condition, which at least was known a few hours before the accident, we feel that the evidence fully sustains our view that the bridge was in reasonably good condition and repair, and that any adult in his or her normal senses could have crossed the bridge without any difficulty whatever. The witness Rowland, who was the first to learn of claimant’s position in the river below the bridge on the morning of the alleged accident, and who assisted her back to the bank of the river, testified that he crossed the bridge many times — four times on the day of the accident — and that it was in good condition. In this respect he was supported by several other witnesses. An attempt was made to show that just a short time ago a child’s leg had gone through some break in the bridge, but no attempt is shown to have been made to locate the child or its parents, who were supposed to have been with the child at the time. Under all the circumstances and conditions, as presented by the record in this case, we are of the opinion that no negligence was shown on the part of the state road commission with reference to maintaining and keeping the bridge in repair, and we are therefore constrained to refuse an award.